The State ex rel. Turner vs. The Circuit Court for Ozaukee County.

THE STATE EX REL. TURNER VS. THE CIRCUIT COURT FOR OZAUKEE COUNTY.

*March 27 — May 12, 1888.*

*Jurisdiction: Criminal law: New trial after affirmance of judgment.*

The circuit court has jurisdiction, under sec. 4719, R. S., to grant a new trial in a criminal case within the time therein prescribed, although, after a previous motion for a new trial had been denied, judgment was entered and such judgment has been affirmed by the supreme court on writ of error. ORTON, J., dissents.

CERTIORARI to the Circuit Court for *Ozaukee* County.

The facts are stated in the opinion. The case of *Town of Saukville v. The State* is reported in 69 Wis. 178.

For the relator there was a brief signed by *Eugene S. Turner,* special district attorney, with *Geo. W. Foster* as counsel, and the cause was argued orally by the *Attorney General.*

For the defendant there was a brief by *Turner & Timlin,* and oral argument by *Mr. W. H. Timlin.*

COLE, C. J.    The town of Saukville was indicted for not repairing a bridge, and was found guilty. A motion was made to set aside the verdict and for a new trial, which motion was denied, and the defendant town was sentenced to pay a fine of $250. The cause was then brought to this court on a writ of error, and the judgment of the circuit court was affirmed. On the return of the record to the circuit court the defendant made a motion, founded upon a petition and affidavits, for a new trial, which motion was granted. A common-law writ of *certiorari* was then issued from this court to review the order of the circuit court granting a new trial. A motion is now made to quash the writ because it was improvidently granted, and that motion is the matter to be considered. The rule is well settled in this court that the only question arising on the motion is

the question of jurisdiction.   Where the writ issues to re-
view the proceedings of a court, that is the only question
which will be examined, though it is otherwise when it
issues to review the proceedings of officers or bodies not
proceeding according to the common law.   It is not neces-
sary to cite our decisions where these principles have been
adjudicated and settled.

Had, then, the circuit court power or jurisdiction to grant
a new trial in this cause?   For the purposes of the case,
jurisdiction may be defined to be the power to hear and
determine the cause or controversy before the court, or the
power to grant the motion for a new trial.   See *Wanzer v.
Howland*, 10 Wis. 16; *Pollard v. Wegener*, 13 Wis. 569;
*Arnold v. Booth*, 14 Wis. 180; *Hauser v. State*, 33 Wis. 678.
Sec. 4719, R. S., reads as follows: " The circuit court may,
at the term in which the trial of any indictment or infor-
mation shall be had, or within one year thereafter, and in
either case before or after judgment, on the petition or
motion in writing of the defendant, grant a new trial for
any cause for which, by law, a new trial may be granted,
or when it shall appear to the court that justice has not
been done, and on such terms as the court may direct."   It
appears that a proper motion was made within one year
from the judgment, upon the grounds addressed to the dis-
cretion of the circuit court, and a new trial was undoubt-
edly granted under the special authority conferred by the
above statute; and the question now is, Had the court
power to grant it?   We can only consider the question of
the power or jurisdiction of the court in the matter, not
whether it exercised that power wisely. or granted the mo-
tion on insufficient grounds, for the court may have erred,
but error does not affect its jurisdiction.

This statute was probably borrowed from Massachusetts.
See Pub. Stats. of Mass. 1882, ch. 114, sec. 128; *Comm. v.
Peck*, 1 Met. 428; *Comm. v. McElhaney*, 111 Mass. 439;

*Comm. v. Scott*, 123 Mass. 418.    Also Terr. Stats. of Wis. (1839), p. 377, sec. 6; R. S. 1849, ch. 149, sec. 6; R. S. 1858, ch. 180, sec. 6.    We do not well see upon what grounds the power of the court to grant the new trial can be denied if the provision is valid.    The fact that the judgment has been affirmed by this court furnishes no sufficient reason for denying that power.    It is said by the affirmance of the judgment it became a finality, a final determination of the cause and sentence of the law.    That view certainly would be correct had not the legislature conferred this special authority to grant a new trial upon a proper cause shown. On affirmance of a judgment in a civil case no new trial could be granted unless the statute authorized it.    Only where the statute does authorize it can a new trial after affirmance be granted, either in a civil or criminal cause.    In actions of ejectment the circuit court can grant a new trial even after affirmance by this court, and this by virtue of a statute upon the subject.    *Haseltine v. Simpson*, 61 Wis. 427.    Consequently we can perceive no sufficient grounds or reasons for denying the validity of the statute to grant a new trial after judgment has been affirmed in this court, any more in a criminal than in a civil cause.    So under sec. 2832, R. S., a large discretionary power is vested in the court to relieve a party within a year from a judgment through mistake or excusable neglect.    In the *McElhaney Case*, it was held that a new trial might be granted in a capital case after sentence of death passed and exceptions had been overruled by the supreme court, which was equivalent to an affirmance of the conviction.    True, in that case a new trial was refused, but still the court distinctly affirm the point stated.    It may be conceded that independently of the statute the court would have no power to grant a new trial after the affirmance of the judgment.    But as the statute expressly authorizes it, the circuit court may, either before or after

judgment, grant a new trial within a year. This right the legislature has seen fit to extend to the convicted party, and we do not see that the provision is obnoxious to any constitutional objection. The reason and policy of this statute are stated by Mr. Justice Taylor in *Ohms v. State*, 49 Wis. 421. Chief Justice Shaw, in *Comm. v. Peck*, 1 Met. 428, gives some reasons in vindication of the wisdom and necessity of the statute. He says: "It may sometimes occur that from the discovery of new evidence it would be perfectly in the power of the defendant to establish his innocence by plenary evidence, if he could avail himself of an opportunity to bring it before a jury. Between the trial and sentence it might be discovered that the conviction was the result of conspiracy and perjury, which could be fully demonstrated on another trial." It was doubtless some such considerations which induced the legislature to enact the provision, and effect should be given to it in a proper case.

Quite an elaborate argument is made on behalf of the relator to establish the position that the court ought not to have granted a new trial on the case presented. It may be that the court erred in its decision, but for the reasons before indicated we cannot consider that point. On this writ we do not review the decision for error, but merely the question whether the court had jurisdiction to make it. Upon that point we confess we are entirely clear that the court, in granting a new trial, did not exceed its jurisdiction, even though it may have erred in granting the trial upon the case presented. *Hauser v. State*, 33 Wis. 678; *In re Semlar*, 41 Wis. 517. It seems hardly necessary to add that the power of the court is rested exclusively upon the authority conferred by the statute, and not upon its general jurisdiction.

It follows from these views that the motion to quash the writ must be sustained.

The State ex rel. Turner vs. The Circuit Court for Ozaukee County.

ORTON, J.  The undersigned most respectfully hereby dissents from the decision of the motion in this case.  The cause of *The State v. The Town of Saukville* had been tried before a jury on a plea of not guilty on its merits.  The jury found the defendant guilty, and the court sentenced it to pay a fine of $250 and costs.  In due time the defendant made a motion to set aside the verdict and to grant a new trial in the cause, which was overruled, and the defendant excepted. On writ of error to this court and bill of exceptions said judgment was affirmed, absolutely, and without any reservation.  After the *remittitur*, the circuit court granted a new trial in the cause ostensibly on the ground that certain evidence which had been given and considered at the trial did not appear in the bill of exceptions in this court, and for other reasons.  This was done, as claimed, by virtue of sec. 4719, R. S., which provides that the circuit court may, at the " term in which the trial of any indictment or information shall be had, or within one year thereafter, grant a new trial for any cause for which, by law, a new trial may be granted, *or when it shall appear to the court that justice has not been done*."  The new trial was evidently granted under the power given by this last clause of the section, for the cause stated was not sufficient as the ordinary ground of a new trial.

This proceeding was brought to this court by *certiorari*. The defendant moved in this court to quash the writ, on the ground that the circuit court had the power and jurisdiction under the above statute to grant such new trial. This court sustained the motion, holding that the circuit court had such power and jurisdiction under said statute, notwithstanding the affirmance of the judgment on the writ of error.  The motion was submitted on the brief of the defendant's counsel, and on a brief of an attorney for the state, the attorney general for some reason omitting to file any brief or cite any authorities on behalf of the state.

In my opinion this motion involved, and the decision has disposed of, the most important question of jurisdiction ever presented to this court. The constitutional jurisdiction of this court not only embraces its power to hear and determine causes coming before it within its appellate jurisdiction and general control over inferior courts, but it embraces also the legal effect of its judgments as *res adjudicatœ*. The legislature, in carrying out the provision of the constitution conferring its jurisdiction, provided that it "may reverse, *affirm*, or modify the judgment, etc., and may, *if necessary or proper*, order a new trial," and "shall remit its judgment or decision to the court from which the appeal or writ of error was taken, *to be enforced accordingly*." Sec. 3071, R. S. This statute does not confer any jurisdiction upon the court, but it is an interpretation of the constitutional provision, and gives it practical effect. Its jurisdiction and judgments are therefore supreme, *dernier*, final, and conclusive, not only as to the subject matter and parties, but also as to all inferior courts in respect thereto. Any law which abridges, impairs, or limits this jurisdiction is void. For instance, if a law should provide for another court that should have a superior appellate jurisdiction and the power to hear and determine appeals and writs of error from this court, and to reverse, affirm, or modify its judgments, or to revise in any manner its proceedings, it would be void. So, also, any law which should give to the circuit court or any other inferior court the power to affect or impair the finality or conclusiveness of its judgments, either by review or by a new trial in the action, or directly or indirectly, would be equally void. The judgment of *affirmance* by this court makes the judgment of the court below its judgment, and such judgment is final and conclusive, and, when remitted to the court below, it is "to be enforced accordingly." This is the clear and unquestionable constitutional effect of a judgment of *affirmance*, or it has no

effect whatever. A statute that should allow the court below to grant a new trial in the action after such judgment of affirmance, would utterly destroy its constitutional effect. If the new trial should result in the same judgment as on the first trial, on the second appeal to this court there might be another judgment of affirmance, but on new grounds, or a judgment of reversal and a new trial ordered. But even that second judgment of affirmance is not·*final*, for under this statute the circuit court might grant another new trial, under that broad ground "that justice has not been done," and so on *forever*. In case of an appeal from the judgment on the second trial, if it should be reversed by this court, then its final judgment of affirmance is effectually wiped out. This court on *reversal* may grant another new trial, or the circuit court may grant a new trial within one year from any subsequent judgment, and so on *ad infinitum*. Can there be any doubt that such a statute would be unconstitutional for having destroyed the effect of the final judgments of this *supreme* appellate court? To give the court below this unlimited control of judgments of affirmance by successive new trials, would practically make litigation in the same action interminable, when the constitution has provided a supreme tribunal in which it shall end forever. In criminal cases such retrials and delays after affirmance of the conviction by this court, would destroy the ultimate certainty of final conviction, and defeat the prompt execution of the criminal laws by the escape of prisoners, the death or removal of witnesses, the loss of testimony, and the increased chances of acquittal, that would justify the present extreme public opinion that criminals escape punishment through the delays and uncertainties of trial, through the meshes and endless circumlocutions of the law. But the *practical* effect of the violation of this principle of the absolute finality and conclusiveness of a judgment of affirmance upon appeal or writ of error from a final judg-

ment of the court below by which the *whole case* is brought
to this court, is not the question. The question is one of
the *jurisdiction* of this court, as to the effect of its judg-
ments, within the constitutional power to hear and *deter-
mine* cases vested in this court of *final* appeal and of *last*
resort. It is the violation of this principle that will be fol-
lowed by these practical and ruinous consequences, and
which no doubt constituted the reason for its establishment,
which is the only matter to be considered.

If the judgments and orders of the inferior court which
are not final but only interlocutory, as intermediate steps in
the proceedings, are brought to this court, then, of course,
the judgment of affirmance by this court is limited to the
precise matter appealed, and is final only as to that alone;
while the main case remains all the time in the court below.
It is only where the judgments appealed are final and fully
dispose of the whole cause, as in this instance, that the affirm-
ance thereof has the effect for which I contend. But as to
such judgments the affirmance thereof must necessarily be
*res adjudicata*, and final as to the whole case, both as to
the law and facts.

So far I have contended that any mere law which should
authorize the lower court to do anything which would de-
stroy or impair the finality and conclusiveness of a judg-
ment of affirmance in such cases, is void. But the statute
referred to has no reference whatever to such cases. It
refers to cases which have remained in the lower court, and
over which it has full jurisdiction before any such final de-
termination in this court. In criminal cases the statute pro-
vides two methods of bringing them to the attention of this
court without a writ of error, which brings the whole record
and the whole case to this court, and they are, *first*, by
special exceptions; and, *second*, by special questions of law
certified to this court. In the first case the exceptions are
sustained or overruled, and in the second the questions or

interrogatories of the court below are specifically answered. Secs. 4720, 4721, R. S. These proceedings are *special*, and the action of this court is confined strictly to them. Neither an appeal nor writ of error is taken from the judgment, and the main case remains in the court below, and there is no judgment of affirmance or reversal in this court. The special exceptions or questions are alone considered and disposed of. If there is a judgment in the court below, it is neither reversed nor affirmed by this court, but remains to be otherwise disposed of. To show the wide difference between such cases and those brought to this court by writ of error it is only necessary to notice the proviso of sec. 4723, which is as follows: "But the proceedings here prescribed shall not deprive any party of his *writ of error* for any error or defect appearing of *record*." I speak of the obvious differences between such cases and this case, in which the final judgment of conviction and sentence on a verdict of guilty was affirmed on a *writ of error* by this court, because the only authority which could be found in all the books claimed to have any such effect, and that is cited in the opinion to sustain this ruling, is the case of *Comm. v. McElhaney*, 111 Mass. 439. That case was disposed of by the supreme court of that state on just such *special exceptions* as we have mentioned, and not at all analogous even to an affirmance of the judgment on a writ of error. It is claimed that our statute (sec. 4719, R. S.) was borrowed from that of Massachusetts, and should have the same construction. Admitting that to be so, that case has no application to or is any authority in this case, for the above reasons. But our statute has one very significant clause that is not found in the Massachusetts statute, which limits our statute to exclude even the power in the circuit court to grant a new trial after such special exceptions are disposed of by this court, without the *mandate* of this court, and most clearly shows that the statute does not in its terms extend to cases in

which the final judgment of the court below has been affirmed on writ of error. That clause is, "*before or after judgment.*" This language can mean nothing else than to refer to cases which are in the circuit court and remain there without the intervention of a writ of error or a judgment of affirmance or even of special exceptions.

We conclude, therefore, that the decision of this motion is absolutely without *authority* as well as in violation of reason and the constitution. This statute, in its general terms, is no broader in its application to criminal cases than the statutes which authorize the circuit court to grant new trials generally or in civil cases, or even as broad, by reason of the above . clause, which clearly limits its operation to .cases which have continued all the time in the circuit court, and within its full jurisdiction, " before or after judgment." In civil cases a new trial may be granted on the minutes of the court, or upon exceptions, for newly-discovered evidence, the verdict being contrary to the law or evidence, or for excessive damages, and other causes, with the only limitation that the " motion must be heard at a special or regular term." R. S. sec. 2878, *et seq.* The court or judge of the circuit court may relieve a party from a judgment " through mistake, inadvertence, surprise, or excusable neglect," with the only limitation of " one year after notice thereof." Sec. 2832, R. S. There is no exception made of any such cases as have been *affirmed* on appeal or writ of error by this court, whether civil or criminal. They all stand alike in this respect. It follows, therefore, that this decision is a *binding precedent* as to the power of the court below to grant new trials in *all* cases, after an absolute and unqualified *affirmance* of the final judgment by this court. The statutes and the reasons are the same in all possible cases, and the circuit courts and other courts of record may grant new trials *ad libitum* in all cases after an appeal from the final judgment of the whole case, and affirmance thereof

by this court without qualification or mandate, for any of the causes named in the statute, within the time limited.

These consequences of the decision may not be ignored, even if they were overlooked, or however *insidious* the precedent, and they will be more serious and deplorable in criminal cases than in civil, because they affect the prompt and certain execution of the criminal law for the protection of the peace and good order of society, by opening the *vista* of an interminable series of trials after the affirmance of the final judgment of conviction by this court, by which the criminal may finally escape. But more important than even these practical consequences is the emasculation or destruction of the constitutional power and jurisdiction of this court, as the court of *last resort*, to render judgments of finality. Already this court has four times decided, in the strongest language possible, that its judgments of *affirmance* are final as to the subject matter appealed, and that the court below can take no step or do anything to impair or change it in the least particular. If the *whole* case be appealed, or is taken by writ of error from the final judgment, then the judgment of affirmance by this court is final and conclusive as to the *whole* case, and the court below, on *remittitur*, can do nothing in the case, or with it, except to execute this final judgment of this court. In *Smith v. Armstrong*, 25 Wis. 517, Mr. Justice PAINE says in the opinion: " This very judgment, having been rendered and *affirmed* on appeal to this court, has become *final* between the parties, and even though it were conceded that there *were errors* in it, they are no longer subject to correction in the circuit court under the *guise* of amendment." In *Stevens v. Clark Co.* 43 Wis. 36, Chief Justice RYAN said: " We know of no case in this court, or indeed elsewhere, in which a judgment of *affirmance* has directed a new trial. Indeed affirmance of a judgment, *ex vi termini*, seems to preclude a new trial. . . . There is neither statute to

authorize, nor practice to sanction, a *discretion for a new trial, upon affirmance.* Such a discretion would convert *affirmance* into reversal." In *Wells v. Am. Exp. Co.* 55 Wis. 23, one of the parties sought to get rid of an order allowing the withdrawal of a stipulation which dispensed with the production of certain evidence which was then supposed to be easily obtainable, which had been affirmed by this court. It was afterwards found that said evidence was not obtainable, and that the order was so made under a mistake. It was held that the affirmance was *res adjudicata,* and there was no relief against it. In *Mowry v. First Nat. Bank,* 66 Wis. 539, it was held that after a judgment had been in part reversed and in part *affirmed* by this court, the part reversed was subject to further trial in the court below, but the part *affirmed* was *res adjudicata* and not subject to further litigation in the court below. In numerous cases in this court it has been held that all the judgments of this court, whether of reversal or affirmance, are final and conclusive except by the express mandate of this court which authorizes further action by the court below. *Luning v. State,* 2 Pin. 215; *Parker v. Pomeroy,* 2 Wis. 112; *Downer v. Cross,* 2 Wis. 371; *Cole v. Clarke,* 3 Wis. 323; *Ranney v. Higby,* 6 Wis. 28; *Miner v. Medbury,* 7 Wis. 100; *Hill v. Hoover,* 9 Wis. 15; *Eastman v. Harteau,* 12 Wis. 267; *Du Pont v. Davis,* 35 Wis. 631; *Hutchinson v. C. & N. W. R. Co.* 41 Wis. 541; *Mohr v. Tulip,* 44 Wis. 274; *Mills v. Evansville Seminary,* 52 Wis. 669, and many other cases.

In other states where the jurisdiction of the supreme court in respect to appeals and writs of error is the same as ours, it has been uniformly held that after a judgment of affirmance the court below can do nothing in the case except to execute such judgment, and no case can be found where it is held otherwise. All objections to the judgment not brought before the supreme court by writ of error and

finally disposed of by judgment of *affirmance* are waived,. and the judgment is final as to the whole case. *Rider v. Union India Rubber Co.* 4 Bosw. 169. A judgment of affirmance upon an equal division of the judges is equally final, and cannot be set aside by the court below. *Mason v. Jones,* 3 N. Y. 375. In *Lyon v. Merritt,* 6 Paige, 473, the defendant moved in the court of chancery to alter or modify its decree which had been affirmed on appeal by the court for the correction of errors, on affidavit of new facts and newly-discovered evidence. It was held that the chancellor had no such power, and that the judgment of *affirmance* was *res adjudicata* between the parties and as to the subject matter, and that unless the judgment of affirmance reserved such right it was gone forever. After the order of the chancellor has been affirmed on appeal, the chancellor has no power to correct even errors in calculation. *Utica Ins. Co. v. Lynch,* 2 Barb. Ch. 573. After judgment of affirmance, no other or different judgment can ever be entered in the case in any way or by any proceeding. It is *res adjudicata. De Agreda v. Mantel,* 1 Abb. Pr. 130. When a judgment is brought into the highest court of the state by appeal or writ of error, and affirmed therein, the final judgment is in the latter court, and the inferior court has nothing to do with it except to carry out and execute it, and can take no step in the case that might result in affecting it in any way. *Eno v. Crooke,* 6 How. Pr. 462. In this case it was held also that the court below could do nothing except to issue execution to enforce the judgment of affirmance. In New York this important principle is held so strictly that an *affirmance* of the judgment upon the dismissal of the appeal or writ of error, is equally a finality, and must be executed by the lower court. *Union India Rubber Co. v. Babcock,* 4 Duer, 620. When a judgment of the supreme court of New York is affirmed by the court of errors, such judgment of *affirmance* is *res adjudicata,* and conclu-

sive as to every question it embraced and upon which, in a subsequent suit, the right of the plaintiff to recover, or the validity of the defense, is found to depend, *under any state of facts* or *under any evidence. Birckhead v. Brown,* 5 Sandf. 134. In this case the affirmance was upon an equal division of the judges, and the question was very fully considered as one of jurisdiction.

When a judgment or decree of a circuit court of the United States has been affirmed by the supreme court, even by a division of the judges, it is final and conclusive, and nothing remains for the lower court to do in the case except to execute it, and this is the doctrine of *affirmance* by the House of Lords on appeal in England. *Durant v. Essex Co.* 7 Wall. 107. A judgment is *affirmed* because it is correct in itself, and is therefore final and conclusive. *Whiting v. Root,* 52 Iowa, 292; *Jamison v. Perry,* 38 Iowa, 14. A judgment of *affirmance* will be conclusive upon all questions which might have been raised in the court below. If they are brought up by the appeal they are finally disposed of, and if not so brought up they will be treated as waived, and the affirmance must be final in all cases. *Grimes v. Hamilton Co.* 37 Iowa, 290. When the plaintiff failed to plead over or to prosecute his suit on overruling his demurrer to the answer, but appealed from the order overruling the demurrer, and the order is *affirmed,* the judgment of the supreme court is final beyond relief. *Dunlap v. Cody,* 31 Iowa, 260. When a judgment of the lower court has been affirmed by the supreme court, the judgment of affirmance is the final judgment, and not the judgment appealed from, and can only be set aside or modified by the supreme court, if at all. *Griffin v. Seymour,* 15 Iowa, 30. After an affirmance of a judgment on an appeal which brings up the whole case or on its merits, there can be no trial *de novo. Trescott v. Barnes,* 51 Iowa, 409. Where a judgment against several must be reversed as to some of the appellants, and ought

to be affirmed as to others, the supreme court will *reverse* the whole judgment as to all, lest a judgment of affirmance as to some, by reason of its being *res adjudicata,* might have the effect to embarrass or hinder the new trial of the other appellants. *Gaar v. Millikan,* 68 Ind. 208. A complaint to *review* a judgment after affirmance must be on *new matter,* but not on *newly-discovered evidence.* The complaint must make a *new case,* and be filed within a certain time. *Hill v. Roach,* 72 Ind. 57. Newly-discovered evidence is not such new matter as to entitle a party to review a judgment. *Fleming v. Stout,* 19 Ind. 328; *Rousch v. Layton,* 51 Ind. 106; *Webster v. Maiden,* 41 Ind. 124. On a *remittitur* from the court of appeals of New York of a judgment of *affirmance,* not even a matter of costs can be corrected by the court below. The lower court can do nothing in the case except to execute the judgment of affirmance. *McGregor v. Buell,* 33 How. Pr. 450. On a judgment of reversal the court below cannot grant a new trial unless ordered by the supreme court, and on a judgment of affirmance no new trial can be had from the very nature of the judgment as a finality. *Davidson v. Dallas,* 15 Cal. 75. From the consequences of a judgment of affirmance as *res adjudicata* the parties cannot in any way be relieved by the lower court. *Phelan v. San Francisco,* 20 Cal. 45. After a judgment of affirmance by the supreme court of the United States the same case cannot be further litigated so as to ever come to the supreme court again by any proceeding. *Washington Bridge Co. v. Stewart,* 3 How. 413.

A judgment of the supreme court is a finality on every fact and question that came before it on the appeal, and it is the *facts,* and not the *evidence* of the facts, that enter into the *estoppel.* *Gill v. Morris,* 11 Heisk. 614. The decision of the supreme court is a finality, and the same case embraced in the appeal can never again come before the court by any proceeding in the court below. *Rector v.*

*Danley*, 14 Ark. 304.    On reversal of a decree by the supreme court the lower court can do nothing except to carry out the *mandate* of the court.    It has no further original jurisdiction in the case.    *Himely v. Rose*, 5 Cranch, 313. The supreme court having original jurisdiction of writs of error, there can be no action taken in the cause by the court below after judgment on the writ of affirmance or of reversal without mandate, even if the statute would seem to allow it.    *Enos v. Boardman*, 2 Tyler, 271.    After judgment in the supreme court there can be no rehearing after the term, because after the term it is *res adjudicata*, binding upon all courts.    *Overton v. Bigelow's Adm'r*, 10 Yerg. 48. The judgment of the supreme court is *res adjudicata* as to all matters which came before the court below, or might have come before that court in the case.    *The Santa Maria*, 10 Wheat. 431.    Judge STORY enforces this principle by allusion to the consequences of its violation, such as "grossest laches and delays, the keeping in question and doubt important property rights, the protraction of litigation indefinitely, endless appeals to the supreme court in the same case, and the infliction upon the innocent of all the evils of *protracted* and expensive litigation."    A judgment of a supreme court establishes an unalterable rule in the case, and an unalterable precedent for other cases, and by it the rights of persons and property are unalterably fixed.    Wells, Res. Adj. ch. 42.

References like the above could be extended to a great length, for the principle established in these cases has been asserted by nearly all of the supreme courts of the states.    I desired to see whether there was any exception in the cases, and could find none.    This court, on the decision of this simple motion, has established the only exception that can be found to the effect that the circuit court or court below, after a judgment of affirmance by this court on a writ of error and bill of exceptions bringing before this court the whole case together with the order of the court below over-

ruling a motion for a new trial on the merits as well as for errors, may grant a new trial. The case was not here on special exceptions or questions merely under the statute, while the main case remained in the court below, like that in Massachusetts, but was here on the *whole record* by a writ of error. If there can ever be in any case a judgment of affirmance that shall be *res adjudicata* and final, it was the judgment of affirmance in this case. It follows, therefore, that the decision takes away, destroys, and emasculates the constitutional jurisdiction of this court, as the *supreme* court, the court of *last* resort, and the *dernier* resort of litigation.

There is no force even in the argument of convenience that the defendant ought to have justice done him under this statute when newly-discovered evidence shows him not guilty. The limitation of one year after judgment may be as much a denial of justice. Every case must at some time be ended. Criminals may safely be left to the mercy of the executive for relief from punishment when their innocence can be made to appear by newly-discovered testimony after a final judgment by this court. As long as this decision stands, the appellant in every appeal, and the plaintiff in every writ of error, in any case, civil or criminal, may, after judgment of affirmance by this court, obtain from the court below a new trial for any of the causes named in the statute, within the time fixed by the statute after the rendition of the judgment in said court, without regard to the judgment of this court. This is the only reasonable and logical effect of the decision as a *precedent* to be followed in other cases. If the decision is sought to be limited to criminal cases, and by the most glaring inconsistency, its effect in destroying the finality of a judgment of affirmance by this court follows as a consequence, and its effect in making criminal trials endless, as well as most uncertain in result, will also follow as a consequence to be deplored.

The importance of this question of the constitutional jurisdiction of this court must be the apology for this long dissenting opinion.

*By the Court.*— The motion to quash the writ of *certiorari* is sustained.